IN THE

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> JEFFREY OLSEN, <br><br> Defendant-Appellee. | C.A. No. 20-50329 <br> D.C. No. CR 17-76-CJC <br> (Central Dist. Cal.) <br><br> **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO STAY THE MANDATE** |

## I. INTRODUCTION

Defendant Jeffrey Olsen was indicted four-and-a-half years ago for illegally prescribing opioids that resulted in multiple overdose deaths. He obtained eight continuances, delaying his trial for over three years, before invoking his speedy trial right to obtain dismissal of his indictment when jury trials were suspended by court order. His request for a stay of the mandate confirms that he does not want a speedy trial at all—he wants only to avoid the consequences of his crimes.

To obtain a stay, defendant must show (1) a reasonable probability of certiorari, (2) a fair prospect of reversal, and (3) a likelihood of irreparable harm if the stay is denied. Defendant establishes none.

*First*, this Court's reinstatement of defendant's indictment places his appeal in an interlocutory posture. Because a defendant has no right to interlocutory review of the denial of a speedy trial claim, there is no reasonable probability that the Supreme Court will grant certiorari now rather than follow its ordinary practice of considering claims only on appeal from a final judgment.

*Second*, while federal courts across the country have suspended jury trials to protect health during the pandemic, not a single other judge in the nation has dismissed an indictment with prejudice due to the suspension of trials. There is thus no precedent supporting defendant's claim, much less a circuit split warranting Supreme Court review. Moreover, no judge of this Court dissented from the panel's conclusion that dismissal *with prejudice* was improper, and there is no fair prospect that five Supreme Court justices will conclude otherwise.

*Third*, defendant will not suffer irreparable harm absent a stay. His claims about the cost of trial preparation and the emotional toll of trial are fundamentally misplaced—the speedy trial right protects against the harms of *delay*, not trial itself. Further postponing trial risks creating, not eliminating, any prejudice.

## II. ARGUMENT

### A. Legal Standard

The mandate "must issue" seven days after the denial of a petition for rehearing, and the Court does not stay its mandate pending a petition for certiorari "routinely" or "as a matter of course." Fed. R. App. P. 41(b); Cir. R. 41-1 & adv. comm. n. Contrary to defendant's contention, obtaining a stay requires far more than simply claiming a petition for certiorari would not be "frivolous." (Motion at 4-5.) While Circuit Rule 41-1 states that a stay "will be denied" if a petition is "frivolous or filed merely for delay," Federal Rule of Appellate Procedure 41(d) requires a showing "that the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1).

> The Supreme Court has articulated a three-part test:
>
> To obtain a stay pending the filing and disposition of a petition for a writ of certiorari, an applicant must show (1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari; (2) a fair prospect that a majority of the Court will vote to reverse the judgment below; and (3) a likelihood that irreparable harm will result from the denial of a stay. In close cases the Circuit Justice or the Court will balance the equities and weigh the relative harms to the applicant and to the respondent.

*Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010); *accord Barefoot v. Estelle*, 463 U.S. 880, 895 (1983); *see also Maggio v. Williams*, 464 U.S. 46, 48 (1983) (adopting same standard in determining whether stay granted by court of appeals pending disposition of a petition for certiorari should remain in effect). The same three-part test applies to this Court's determination of defendants' motion. *See Netherland v. Tuggle*, 515 U.S. 951, 952 (1995) (per curiam) (vacating stay where court of appeals failed to undertake required three-part inquiry); *Coalition for Economic Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) (citing *Netherland*); Fed. R. App. P. 41 adv. comm. n. (1994) (incorporating Supreme Court standard).

Furthermore, because "[a] stay is an intrusion into the ordinary processes of administration and judicial review," it "is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 427 (2009). Rather, it is "an exercise of judicial discretion," and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34.

**B.     Defendant Does Not Satisfy the Standard for a Stay of the Court's Mandate**

Defendant identifies the applicable test (Motion at 4–5 n.4) but does not satisfy any of its parts.

### 1.     *There is no reasonable probability that the Supreme Court will grant certiorari at this stage*

This Court's opinion reversing the dismissal of the indictment and remanding this case for trial, *see United States v. Olsen*, --- F.4th ----, 2022 WL 60361, at *11 (9th Cir. 2022), puts defendant in the same position as any defendant whose motion for dismissal on speedy trial grounds has been denied before trial. Defendants in that posture have no right to interlocutory review of their speedy trial claims and must instead await review after final judgment. *United States v. MacDonald*, 435 U.S. 850, 861 (1978); *United States v. Mehrmanesh*, 652 F.2d 766, 769-70 (9th Cir. 1981).

The non-final status of defendant's claim renders this case unsuitable for Supreme Court review. *Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook R.R.*, 389 U.S. 327, 328 (1967) (per curiam) ("[B]ecause the Court of Appeals remanded the case, it is not yet ripe for review by this Court."). "Finality as a condition of review is an historic characteristic of federal appellate procedure,"

5

*Cobbledick v. United States*, 309 U.S. 323, 324 (1940), and the Supreme Court has long observed that the interlocutory posture of a case "alone furnishe[s] sufficient ground for the denial" of a petition for certiorari. *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 258 (1916).

Principles of judicial economy and efficiency undergird the Supreme Court's practice of denying interlocutory petitions. The proceedings on remand may moot the issues presented. And even if not, the practice ensures that issues raised at different stages may be consolidated in a single petition after all lower-court proceedings have concluded. *See Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 508 n.1 (2001) (per curiam) ("[W]e have authority to consider questions determined in earlier stages of the litigation where certiorari is sought from the most recent of the judgments of the Court of Appeals.").

Defendant's forthcoming request for interlocutory Supreme Court review of his speedy trial claim faces even taller odds. Reviewing defendant's claim now "would simply add to the problem of pre-trial delay," *Mehrmanesh*, 652 F.2d at 770, threatening "precisely the values" the speedy trial right is designed to protect, *MacDonald*, 435 U.S. at

6

862. Those values include "the societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *Id.*; *see also Cobbledick*, 309 U.S. at 325 ("[E]ncouragement of delay is fatal to the vindication of the criminal law."). Delay "may prejudice the prosecution's ability to prove its case . . . and prolong the period during which defendants released on bail may commit other crimes." *MacDonald*, 435 U.S. at 862. Those concerns are substantial here. Defendant was indicted four-and-a-half years ago for crimes he committed between six and eight years ago. (*See* 2-ER-33–37.) Further postponing defendant's prosecution impairs the government, the rights of victims, and the public interest in the administration of justice.[1]

---

[1] The Central District of California recently entered a new order suspending jury trials due to a surge of the highly-transmissible COVID-19 Omicron variant. *See* C.D. Cal. Order of the Chief Judge No. 22-001, In Re: Coronavirus Public Emergency, Temporary Suspension of Jury Trials (Jan. 3, 2022). That suspension is scheduled to continue until February 28, 2022. *See* Notice from the Clerk, "Extension of the Temporary Suspension of Jury Trials" (Jan. 19, 2022), *available at* http://www.cacd.uscourts.gov/news/extension-temporary-suspension-jury-trials. Of course, given that defendant now seeks a stay, the current trial suspension inures to his benefit.

At this stage, moreover, the Supreme Court cannot accurately assess any claim that defendant was prejudiced by pretrial delay. "Before trial, of course, an estimate of the degree to which delay has impaired an adequate defense tends to be speculative." *MacDonald*, 435 U.S. at 858; *accord Mehrmanesh*, 652 F.2d at 769 ("[T]he extent of the prejudice suffered by the defendant cannot be measured accurately until after trial."). Even if the Supreme Court believed defendant's speedy trial claim merited review notwithstanding that he sought over three years of delay before the pandemic and seeks further delay now, there is no reasonable probability that the Supreme Court would intervene now.

### 2. *There is no fair prospect that the Supreme Court will reverse*

Defendant also does not demonstrate a fair prospect of reversal. He points out that federal courts across the country have suspended jury trials during the pandemic (Motion at 6) but ignores that not a single other federal judge has dismissed an indictment with prejudice due to a pandemic-related trial suspension. Instead, as trials have been suspended to protect public health, judges nationwide have granted continuances (*see* GOB 37-38 (citing cases); GRB 15-16 (citing cases)),

8

and have denied speedy trial motions to dismiss criminal charges with prejudice, *see, e.g.*, *United States v. Allen*, 2021 WL 5994725, at *3 (E.D. Mich. Dec. 16, 2021); *United States v. Dunn*, 2021 WL 4516138, at *7-9 (S.D. Fla. Oct. 1, 2021); *United States v. Freeman*, 2021 WL 5772773, at *22-23 (E.D. Mo. Aug. 5, 2021); *United States v. Fry*, 2021 WL 304558, at *2-4 (D. Or. Jan. 29, 2021). Not only is defendant unable to point to a circuit split warranting Supreme Court review, but he cannot even identify a single other judge in the nation who has agreed with the district court in this case.

Defendant's observation that two judges of this Court dissented from the denial of rehearing en banc (Motion at 3) fails to acknowledge that those judges agreed that dismissal with prejudice was improper, *Olsen*, 2022 WL 60361 at *37 (Collins, J., dissenting) ("I agree that . . . the district court abused its discretion in dismissing the indictment with prejudice rather than without prejudice."). Thus, apart from the district judge in this case, no federal judge in the nation has opined that the suspension of jury trials to protect public health during the pandemic may entitle a defendant to avoid all criminal liability. There

9

is no fair prospect that five Justices of the Supreme Court will hold otherwise.

Defendant's contrary argument relies on inapposite Free Exercise and vaccine mandate cases. (Motion at 6-8 & nn. 5, 7, 8.) *See, e.g., Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, --- S. Ct. ----, 2022 WL 120952 (2022); *Biden v. Missouri*, --- S. Ct. ----, 2022 WL 120950 (2022); *S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716 (2021); *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020). Those were civil lawsuits for injunctive relief. Defendant has not sued the Central District or sought an injunction to require that jury trials proceed despite health risks.

Moreover, the policies challenged in those civil suits were reviewed under standards that do not apply here. Free Exercise claims trigger strict scrutiny, "a limiting and rigid test," *United States v. Am. Library Ass'n, Inc.*, 539 U.S. 194, 197 (2003), that prohibits First Amendment restrictions "unless the State can show they are the least restrictive means of achieving a compelling government interest," *S. Bay United*, 141 S. Ct. at 717-18 (statement of Gorsuch, J.). The vaccine mandate cases involved legal questions of whether federal

10

agencies exceeded their statutory authority. *Nat'l Fed'n*, 2022 WL 120952, at *3-4 (Secretary of Department of Labor lacked statutory authority to impose broad vaccine mandate); *Biden*, 2022 WL 120950, at *2-3 (Secretary of Health and Human Services permissibly exercised authority to impose healthcare worker vaccine mandate).

A speedy trial claim does not trigger strict scrutiny, nor does it involve a pure question of statutory interpretation. Rather, the right is "slippery" by nature. *Barker v. Wingo*, 407 U.S. 514, 522 (1972). The Speedy Trial Act enumerates multiple factors "among others" to best advance "the ends of justice" and avoid "a miscarriage of justice." *See* 18 U.S.C. § 1361(h)(7); *Olsen*, 2022 WL 60361, at *7-9. That standard provides "flexibility." *Bloate v. United States*, 559 U.S. 196, 214 (2010); *Zedner v. United States*, 547 U.S. 489, 498 (2006). Likewise, a constitutional speedy trial claim involves "a flexible 'functional analysis' in weighing the various interests." *United States v. Williams*, 782 F.2d 1462, 1465 (9th Cir. 1985) (quoting *Barker*, 407 U.S. at 522). That analysis bears no similarity to the rigid strict scrutiny standard or the pure statutory interpretation questions in the decisions defendant cites. Those cases do not demonstrate a fair prospect that five Justices will

11

disagree with every other federal judge who has opined against the specific relief defendant seeks here.

### 3. *Defendant has not demonstrated irreparable harm*

Defendant also falls far short of showing the requisite irreparable harm. He claims that proceeding to trial would entail a waste of resources and "stress, anxiety, and other emotional harm." (Motion at 9-10.) Those abstract grievances "grounded in platitudes rather than evidence," *see Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013), do not carry defendant's burden to demonstrate that a stay is necessary to avoid irreparable injury. *See Nken*, 556 U.S. at 434-35; *Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017) (merely stating an interest does not satisfy the *Nken* standard).

Defendant's claimed irreparable injuries are also misplaced. "It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial." *MacDonald*, 435 U.S. at 861. Likewise, "the Speedy Trial Act does not embody a 'right not to be tried' . . . . It is the delay and not the trial that is the target of the Act." *Mehrmanesh*, 652 F.2d at 769. The speedy trial right does not protect against the harms of trial that defendant asserts. Indeed, the

mismatch between the right defendant invokes—a speedy trial—and the remedy he now seeks—trial delay—reveals the emptiness of his claim on the merits and the true purpose of his motion: delay. That is not grounds for a stay. *See* Ninth Cir. R. 41-1.

Furthermore, the cost of proceeding to trial before the filing and resolution of a certiorari petition is not the sort of particularized injury that might warrant a departure from "the ordinary processes of administration and judicial review." *Nken*, 556 U.S. at 427. On the contrary, the harms defendant asserts exist in every case where this Court reverses dismissal of an indictment and the defendant then seeks certiorari. Granting a stay based on those circumstances would contravene this Court's admonition that a stay pending the filing of a certiorari petition "will not be granted as a matter of course." Ninth Cir. R. 41-1; *see also United States v. Silver*, 954 F.3d 455, 460 (2d Cir. 2020) (denying stay for failure to demonstrate good cause under Rule 41(d) where defendant merely made "customary" claim that he may serve prison time for a conviction that may eventually be reversed), *cert. denied*, 141 S. Ct. 656 (2021).

The prospect of conviction during the pendency of defendant's (interlocutory) petition for certiorari is also not a basis for a stay. Any such harm is not *irreparable* because the Supreme Court retains the discretion to review defendant's speedy trial claims (and any other question arising from his proceeding) after any conviction and, if warranted, vacate the judgment. Harm that can be "'prevented or fully rectified' by a successful appeal" is not irreparable harm. *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (quoting *Roland Machinery Co. v. Dresser Indus.*, 749 F.2d 380, 386 (7th Cir. 1984)).

### 4. *The balance of the equities weighs against a stay*

Finally, even if defendant could demonstrate any cognizable harm, the balance of the equities and the public interest weigh against a stay. Defendant was indicted in July 2017 for crimes he committed years earlier, and a stay could delay proceedings for many months while awaiting the Supreme Court's determination of whether or not to grant review. Fed. R. App. P. 41(d)(2)(B)(ii) (although stay of mandate pending a petition for certiorari may not exceed 90 days, if a petition is filed during the period of the stay, the stay continues until the Supreme Court's final disposition).

Delay, "however short," may prejudice the prosecution's ability to prove its case due to the loss of evidence or the fading of memories. *See United States v. Marion*, 404 U.S. 307, 321-22 (1971); *MacDonald*, 435 U.S. at 862; *United States v. Mays*, 549 F.2d 670, 677 n.12 (9th Cir. 1977). The government has been prepared to try this case for years, including when it opposed defendant's sixth continuance request in August 2019 (*see* 2-ER-102, 108–09). Continued delay risks compromising the prosecution.

Defendant's motion also conflicts with the public's interest in the efficient administration of justice. *See Cobbledick*, 309 U.S. at 325; *see also U.S. v. R. Enterprises, Inc.*, 498 U.S. 292, 299 (1991) (noting "the public's interest in the fair and expeditious administration of the criminal laws"). The Speedy Trial Act "was designed with the public interest firmly in mind," *Zedner*, 547 U.S. at 500-01, and that interest should be vindicated as soon as public health constraints permit. Any potential harm to defendant from litigating this case pending the filing and disposition of a certiorari petition is outweighed by the strong countervailing interests in adjudicating the criminal charges in the indictment that this Court reinstated.

### III. CONCLUSION

Defendant's motion for a stay of the mandate should be denied.

DATED: January 20, 2022              Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

/s/ *Bram M. Alden*

BRAM M. ALDEN
Assistant United States Attorney,
Chief, Criminal Appeals Section

Attorneys for Plaintiff-Appellant
UNITED STATES OF AMERICA